```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: AUG 03 2015
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARNALDO ARZU,

                Plaintiff,

      v.

CITY OF NEW YORK, ET AL.,

                Defendants.

No. 13-CV-5980 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

In this action pursuant to 42 U.S.C. §§ 1983 and 1988, Arnaldo Arzu claims violations of his civil and constitutional rights by the City of New York, Police Officers Armestead, Aruna Maharaj, Edward Langseder and other unidentified officers, in connection with six incidents that occurred between November 12, 2011 and September 3, 2012. On each occasion, Arzu was allegedly stopped, searched, and issued with a summons and/or arrested; subsequently, in each instance, he was released from custody and the case against him was dismissed. Compl. ¶¶ 15–71. Arzu has previously brought similar lawsuits against the City, resulting in settlements in 2008, 2011, and 2012.[1] As discussed further below, in the last of those agreements, the City of New York paid Arzu $15,000 to settle his claims, in consideration of which he signed a general release of claims ("Release"). Speight Decl. Ex. B (Dkt. No. 29).

Before the Court is Defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Defendants argue that each of the claims asserted in the instant

---

[1] See Stipulation and Order of Settlement and Dismissal, No. 06-CV-053 (LTS) (Dkt. No. 34); Stipulation of Settlement and Order of Dismissal, No. 10-CV-3091 (DAB) (Dkt. No. 23); Speight Decl. Ex. B (Dkt. No. 29).

action are covered by the terms of the Release and that, therefore, Plaintiff's action must be dismissed. For the reasons that follow, Defendants' motion is granted.

## BACKGROUND[2]

Arzu alleges that from November 2011 to the date the Complaint was filed, Defendants "systematically harassed, falsely arrested, [and] maliciously prosecuted" him in retaliation for the exercise of his right to free speech, and as a result of racial and political discrimination. Compl. ¶ 14. His claims are based on six specific incidents:

On November 12, 2011, Arzu was stopped and arrested by police officers at 370 Morris Avenue in the Bronx, where he was visiting his son's mother, Tamika Scott. He was issued two summonses for disorderly conduct and failure to update his address. Compl. ¶¶ 17, 21–22. He was later released from custody and on January 30, 2012, the case was dismissed. *Id.* ¶¶ 25–26.

On January 17, 2012, while at the same address, Arzu was stopped again by police officers and issued a summons. Compl. ¶¶ 27, 29, 33. He was released from custody and the case was dismissed after several court appearances. *Id.* ¶¶ 36–37.[3]

On February 4, 2012, Arzu was stopped and questioned by police officers at 416 East 136th Street in the Bronx, and issued two summonses for walking on the street while the sidewalk was available. Compl. ¶¶ 38, 42. He was again released from custody, and the case was dismissed on April 19, 2012. *Id.* ¶¶ 45–46.

---

[2] Except as otherwise noted, the facts set forth herein are taken from the Complaint and are presumed to be true for the purposes of this motion to dismiss.

[3] Arzu does not allege the crime with which he was charged in this instance, the date of his release, or the date of the case's dismissal.

On March 9, 2012, Arzu was again stopped by police officers at 370 Morris Avenue, issued two summonses, and later released from custody. *Id.* ¶¶ 47–49, 52.[4] Following several court appearances, the case was dismissed on May 17, 2012. *Id.* ¶ 53.

On March 30, 2012, Arzu was stopped by police officers within the vicinity of Willis Avenue and East 137th Street in the Bronx, searched, and issued a summons for "Jay Walking." *Id.* ¶¶ 54–57. Arzu was ultimately released from custody and the case was dismissed. *Id.* 60–61.[5]

On September 3, 2012, Arzu was stopped and searched by police officers in the vicinity of Alexander Avenue and East 140th Street in the Bronx, and placed under arrest. Compl. ¶¶ 62–65, 70–71. The following day, after being arraigned, Arzu was released from custody and the case against him was adjourned in contemplation of dismissal. *Id.* ¶¶ 70–71; Speight Decl. Ex. C, *People of the State of New York v. Arzu*, Dkt. No. 2012BX050900, Certificate of Disposition No. 104623. The case was dismissed on March 1, 2013. *Id.*

In connection with these six incidents, Arzu asserts claims under § 1983 for unlawful stop and search, false arrest, malicious prosecution, unreasonable force, deprivation of his right to a fair trial, malicious abuse of process, First Amendment retaliation, and failure to intervene. Compl. ¶¶ 73–103. In addition to his claims against the officers, he asserts a claim for municipal liability against the City pursuant to *Monell v N.Y.C. Dep't of Social Servs.*, 463 U.S. 658 (1978).

Defendants argue that these claims are precluded by the terms of the Release, dated December 13, 2012, in which Arzu—in exchange for $15,000—released and discharged the City and "all past and present officers, directors, managers, administrators, employees, agents, assignees, lessees, and representatives of the City," from any and all claims which Arzu had or

---

[4] Arzu does not allege the relevant charges regarding this incident.

[5] Arzu does not allege the dates of his release or the dismissal of the charge.

may have in the future "for, upon or by reason of any matter, cause or thing whatsoever that occurred through the date of this release." Speight Decl. Ex. B at 1.

## LEGAL STANDARD

The standard for determining a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Hogan v. Fischer*, 738 F.3d 509, 514–15 (2d Cir. 2013); *Alcantara v. Bakery & Confectionary Union & Indus. Int'l Pension Fund Pension Plan*, 751 F.3d 71, 75 (2d Cir. 2014). Therefore, to survive a Rule 12(c) motion, "the complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'" *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

When adjudicating a Rule 12(c) motion, the court must accept as true the complaint's factual allegations and draw all reasonable inferences in favor of the plaintiff. *Kirkendall v. Halliburton*, 707 F.3d 173, 178 (2d Cir. 2013). In addition to the complaint, the Court may consider the answer, any written documents attached to the pleadings, and "any matter of which the court can take judicial notice for the factual background of the case." *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009). Documents may be attached to a pleading as an exhibit or be incorporated by reference. Fed. R. Civ. P. 10(c); *Faconti v. Potter*, 242 F. App'x 775, 777 (2d Cir. 2007) (citing *Brass v. American Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)). *See also L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 421–22 (2d Cir. 2011).

4

## DISCUSSION

### I.   Considering the Release

In their motion for judgment on the pleadings, Defendants argue that the Release, which released and discharged the City and its affiliates from claims that arose through December 13, 2012, mandates dismissal of this case, which is based on conduct that occurred through September 2012. Plaintiff argues, however, that the Court should not consider the Release for purposes of this motion because it falls outside the four corners of the Complaint and is not incorporated by reference. Pl. Opp. at 3 (Dkt. No. 31).

The Court agrees with Defendants that it may properly consider the Release. Defendants amended their Answer with leave of the Court to add a defense based on the Release, which they discovered during the course of settlement negotiations between the parties. Speight Nov. 5, 2014 Ltr. (Dkt. No. 16).[6] The Amended Answer asserts that "Plaintiff's claims are wholly barred by a General Release executed by plaintiff on December 13, 2012, which operates to release defendants from any liability for events alleged in the complaint." Am. Answer ¶ 141. The Release, which had previously been filed with the Court, *see* Dkt. 19, was therefore incorporated into Defendants' Amended Answer. Defendants also attached a copy of the Release to their motion for judgment on the pleadings, which was simultaneously filed with the Amended Answer. Dkt. No. 29. The Court thus finds it appropriate to consider the Release as part of the pleadings for purposes of Defendants' motion. *See L-7 Designs, Inc., LLC*, 647 F.3d at 422 (considering emails attached to a party's counterclaims where the counterclaims were included in the same document as the answer).

---

[6] Although Plaintiff objects to Defendants' delay in seeking to assert the defense, Pl. Opp. at 5, the Court expressly gave Defendants permission to amend the Answer on this basis at the November 20, 2014 conference, *see* Endorsed Mem. Order (Dkt. No. 21). The Court has thus already considered the timeliness of the amendment, and is satisfied that any delay in the assertion of the defense was not the result of bad faith.

5

In any event, even if the Release was not incorporated into the pleadings, the Court would nevertheless be permitted to consider it as a matter related to "the factual background of the case" of which the Court may take judicial notice. *Roberts*, 582 F.3d at 419. Pursuant to Federal Rule of Evidence 201(b), the Court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Although Plaintiff argues that the Court should not consider the Release, at no point, including in his opposition to this motion, has he disputed the authenticity of the Release, or his knowledge of it. *See* Pl. Opp. at 3. In fact, after Defendants sent Plaintiff a copy of the Release during settlement negotiations, Plaintiff conceded to the Court that he had executed the Release in connection with another claim against the City on December 13, 2012. Joint Motion for Conference (Dkt. No. 17). Moreover, on November 20, 2014, the Court expressly advised Plaintiff that it would consider the Release's application to this case, and with that aim, granted Defendants' request to amend the Answer and move to dismiss the complaint on such basis. Status Conference Minute Entry (Dkt. Entry dated Nov. 20, 2014); *see also* Speight Jan. 30, 2015 Ltr. (Dkt. No. 25). In sum, despite Plaintiff's objection, the Court cannot reasonably question the Release's accuracy; judicial notice would therefore be appropriate even if the Release were not incorporated into Defendants' Amended Answer.

## II.   Scope of the Release

Having concluded that the Release may be considered for purposes of this motion, the question remaining is whether it bars the instant action in its entirety. The Court concludes that it does.

Settlement agreements must be construed according to general principles of contract law. *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999) (citations

omitted). Under New York law, a release that is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced. *Pampillonia v. RJR Nabisco. Inc.*, 138 F.3d 459, 463 (2d Cir. 1998) (citing *Skluth v. United Merchants & Mfrs., Inc.*, 559 N.Y.S.2d 280, 282 (1st Dep't 1990)). As described above, the 2012 agreement released any and all claims which Plaintiff had or may have in the future "for, upon or by reason of any matter, cause or thing whatsoever that occurred through" December 13, 2012 against the City and "all past and present officers, directors, managers, administrators, employees, agents, assignees, lessees, and representatives of the City." Speight Decl. Ex. B. This language is clear and unambiguous; by its plain meaning, it applies to any claim by Arzu arising during the relevant period against the City and its employees. Indeed, language identical to that in the Release has been considered clear and unambiguous in other cases involving the City. *See e.g., Muhammad v. Schriro*, 2014 WL 4652564 (PKC), at *5 (S.D.N.Y. Sept. 18, 2014); *Walbrook v. Reilly*, 56 F.Supp.3d 176, 177 (E.D.N.Y. 2014).

Furthermore, by contrast to releases with a narrower scope, the Release applies "without limitation [to] all claims that a party ever had against a party until the date of the release," and contains no language either restricting it to claims which could have been alleged in the earlier action, or limiting its admissibility to the prior proceedings. *Peterson v. Regina*, 935 F.Supp.2d 628, 636 n.3 (S.D.N.Y. 2013) (distinguishing general release from release from "any and all claims that were or could have been alleged by [plaintiff] in the aforementioned action") (adopting Report and Recommendation); *see also Smith v. City of New York*, 2014 U.S. Dist. LEXIS 166769, at *4 (E.D.N.Y. Dec. 2, 2014) (considering a release limited by its terms to civil rights violations, and by a stipulation that the release "shall not be admissible in, nor is it related to, any other litigation or settlement negotiations").

The Release therefore bars Plaintiff from bringing any claim against the City of New York and the individual officer Defendants for any incident that occurred prior to December 13, 2012.[7] This period includes each of the six incidents described in the Complaint.

Plaintiff argues, however, that certain claims regarding the sixth incident on September 3, 2012—namely his denial of a fair trial and malicious abuse of process claims—survive notwithstanding the Release, because "[t]he statute of limitations for these claims did not accrue until the case was dismissed" on March 1, 2013. Pl. Opp. at 5. But although the underlying charge was not officially dismissed until after the period governed by the Release, Plaintiff was released from custody and the charge was adjourned in contemplation of dismissal on September 4, 2012. Compl. ¶ 71; *People of the State of New York v. Arzu*, Dkt No. 2012BX050900, Certificate of Disposition No. 104623 (Mar. 27, 2013).[8] Thus, despite the formal dismissal date, Plaintiff suffered no injury after September 4, 2012 upon which either a malicious abuse of process or fair trial claim could plausibly be based.

A fair trial claim arises when "(1) [an] investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." *Jovanovic v. City of N.Y.*, 486 F. App'x 149, 152 (2d Cir. 2012); *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). Here, Plaintiff alleges no deprivation of liberty occurring after he was released on September 4, 2012. *See* Compl. ¶¶ 87–88.

---

[7] The named Defendants in this action are the City of New York and police officers who work for the City and are thus clearly parties envisaged by the Release. The ten unnamed defendants are alleged to be "police officers, detectives or supervisors employed by the NYPD," Compl. ¶ 11 and would therefore be covered by the Release as well.

[8] The Court takes judicial notice of the dates of adjournment and dismissal noted on the certificate of disposition, which is a public record. *See Duncan v. Cardova*, 2014 U.S. Dist. LEXIS 119597, at *16 (S.D.N.Y. Aug. 22, 2014) *report and recommendation adopted*, 2014 U.S. Dist. LEXIS 143442 (S.D.N.Y. Sept. 26, 2014).

Similarly, there is no injury occurring after that date to support a malicious abuse of process claim. To establish such claim under § 1983, Plaintiff must plausibly allege that Defendants "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse [or] justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Peter L. Hoffman, Lotte, LLC v. Town of Southampton*, 523 F. App'x 770, 771 (2d Cir. 2013) (looking to New York law and quoting *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003)). Plaintiff does not allege in the Complaint that Defendants employed any type of legal process against him after his release from custody on September 4, 2012.

Thus, as to both his fair trial and malicious abuse of process claims, Plaintiff alleges no plausible injury occurring outside of the period covered by the Release. *See* Compl. ¶¶ 92–93. Accordingly, the Release bars Plaintiff's claims based on all six incidents alleged in the Complaint and the action is defeated in its entirety.

## CONCLUSION

For the foregoing reasons, Defendants' motion for judgment on the pleadings is granted. The Clerk of the Court is respectfully directed to close item 28 on the docket and close this case.

SO ORDERED.

Dated: August 3, 2015
New York, New York

Ronnie Abrams
United States District Judge

9